UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DWIGHT D. MITCHELL | Civil No. 12-3394(FLW) |
| Plaintiff. |  |
| vs. |  |
|  | OPINION |
| COLONEL JOSEPH R. FUENTES, et al., |  |
| Defendants |  |

**WOLFSON, United States District Judge:**

The instant matter arises out of Plaintiff Dwight D. Mitchell's (Plaintiff) Complaint asserting state and federal constitutional violations against Defendants Colonel Joseph R. Fuentes ("Fuentes"), Vinicius Vicente ("Vicente"),[1] and Dameon Crawford ("Crawford") (collectively, "Defendants") arising out of a traffic stop and resulting citations.[2] Defendants filed a motion to dismiss all counts of the Complaint on the basis that the Complaint is barred by collateral estoppel and fails to state a claim upon which relief can be granted. Plaintiff opposes Defendant's motion, and has filed a cross-motion for leave to amend his Complaint. In response, Defendants argue that leave to amend the Complaint should be denied on futility grounds. For

---

[1] Plaintiff refers to this individual by the last name "Vincente," while Defendants use the name "Vicente," which is also the spelling used by the state court in the underlying matter. See Def. Br., Ex. A (State of N.J. v. Mitchell, No. A-3524-10T3, *1, at *1 (N.J. App. Div. Feb. 27, 2012)). The Court will therefore employ Defendant's spelling throughout this opinion.

[2] Jurisdiction is proper over all of Plaintiff's federal constitutional claims under 28 U.S.C. §§ 1331 & 1343, and jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

the reasons that follow, the Court grants Defendants' motion to dismiss, and grants, in part, Plaintiff's motion for leave to file an amended complaint.

I. BACKGROUND

For the purposes of this motion to dismiss, the following facts, taken from the Complaint, are assumed to be true.[3]

On June 6, 2010, Plaintiff, an African American male, was stopped by Defendants Vicente and Crawford, New Jersey State Police Officers, for speeding and reckless driving on northbound Route 287 in Edison Township. Compl., ¶¶ 2-3, 5-7. Plaintiff alleges that he was driving home when he noticed that a police car began following him at a high rate of speed, forcing Plaintiff to change lanes and speed to avoid a collision. Id., ¶ 5. After being stopped by Defendants Vicente and Crawford, Plaintiff was issued citations for speeding at 130 mph in a 65 mph zone and for reckless driving. Id., ¶ 6.

On September 14, 2010, after a trial in the Edison Municipal Court, Plaintiff was convicted of speeding at 130 mph in a 65 mph zone, fined $272 and $33 in court costs, and received a six month license suspension. Id., ¶ 11. Plaintiff appealed this decision to the Superior Court, Law Division of New Jersey, and in so doing, supplemented the record with the newly obtained patrol car video (the "Patrol Video").[4] Id., ¶¶ 12-13. The Superior Court modified the municipal court's judgment and findings with regard to the speeding charge, holding that Plaintiff was speeding at 90 mph instead of 130 mph, and reinstated Plaintiff's

---

[3] Additional relevant facts contained in Plaintiff's proposed Amended Complaint will be set forth as needed infra in Part III.B.

[4] After receiving the citations, Plaintiff alleges that he requested discovery on June 20, 2010 and again on September 17, 2010. Compl, ¶ 9. Plaintiff further alleges that of the 36 items he requested, he received only copies of the two original summonses and an incomplete patrol car video. Id., ¶ 10. Plaintiff later apparently obtained the complete Patrol Video, which Defendants have submitted as Exhibit B to their moving papers.

driving privileges.  Id., ¶ 14.  The Superior Court left unaltered Plaintiff's reckless driving conviction.  See id.  Plaintiff then appealed this judgment to the Appellate Division, which affirmed the speeding conviction but reversed the reckless driving conviction.  Id., ¶ 15.

Plaintiff subsequently filed the instant action alleging constitutional violations under 42 U.S.C. §§ 1983, 1985, and 1986, and a violation of the New Jersey Civil Rights Act ("NJCRA").[5]  Specifically, Plaintiff argues that Defendants Vicente and Crawford lacked probable cause to stop Plaintiff, and/or did so, or conspired to do so, only on account of his race, see id., ¶¶ 4-6, thus violating his Fourth Amendment right to be free from an unlawful seizure and his Fourteenth Amendment right to equal protection under the law.  See id., Counts One through Four.  Plaintiff also alleges a failure to train claim against Defendant Fuentes for failing to prevent these officers from depriving Plaintiff of his Fourth and Fourteenth Amendment rights.  See id., Count Six.  Lastly, Plaintiff reiterates his federal constitutional claims against all Defendants in the form of a violation of the NJCRA.  See id., Count Five.  In addition to the facts plead in the Complaint, Plaintiff implicitly incorporates by reference the Patrol Video as further proof supporting his claims.  See id., ¶¶ 16-17; see also supra Footnote 4.  Defendants now move to dismiss the entirety of Plaintiff's Complaint as either barred by the doctrine of collateral estoppel or for failing to state a claim upon which relief can be granted.  In addition to opposing Defendants' motion, Plaintiff also filed a motion for leave to file an Amended Complaint, with the proposed Amended Complaint attached thereto, which Defendants oppose on the ground that any amendment would be futile.

---

[5]  In addition to filing a complaint with this Court, Plaintiff has also filed a Petition for Certification with the New Jersey Supreme Court, which was pending at the time Defendants filed their motion to dismiss.  Pl. Omnibus Br., 7.  Review of the Supreme Court records, of which this Court takes judicial notice, indicates that this Petition was denied, and thus the Appellate Division decision, upholding Plaintiff's speeding conviction, is the final judgment in the matter.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); see also Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

However, "the tenant that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has act unlawfully." Id. (citing Twombly, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

4

When presented with a motion to dismiss, the court should engage in a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. Id. It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 556 U.S. at 667). Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234-35).

### III. DISCUSSION

Defendants move to dismiss all counts of Plaintiff's Complaint. In response, Plaintiff opposes certain arguments advanced by Defendants, but effectively concedes that the majority of Plaintiff's claims in the Complaint are inadequately pled by instead filing a motion for leave to file an Amended Complaint. See generally Pl. Omnibus Brief. Defendants oppose Plaintiff's motion for leave to amend on the basis that, even in light of the additional facts pled in the proposed Amended Complaint, Plaintiff does not state a claim upon which relief can be granted, and thus amendment is futile. In the interest of clarity, I analyze first those issues which do not depend on amendment, namely, whether Plaintiff's claims are barred by the doctrine of collateral estoppel; I then analyze Defendants' motion to dismiss and opposition to amending the Complaint by relying on Plaintiff's proposed Amended Complaint.

### A. Plaintiff's Fourth Amendment § 1983 Claims[6]

Plaintiff alleges, in Count One, that Defendants Vicente and Crawford violated Plaintiff's Fourth Amendment rights,[7] and, in Count Two, that Defendants Vicente and Crawford conspired to do so.[8] Specifically with regard to these Fourth Amendment claims, Plaintiff asserts false arrest, false imprisonment, and malicious prosecution claims based on the Fourth Amendment's protection against deprivations of liberty without due process of law. The core of all of these claims is Plaintiff's assertion that Defendants Vicente and Crawford lacked probable cause to stop Plaintiff's car and issue him speeding and reckless driving citations. Defendants argue in their motion to dismiss that the doctrine of collateral estoppel (issue preclusion) bars Plaintiff from contesting probable cause because that issue was raised and decided in prior state court proceedings. Def. Br., 9-12. Specifically, Defendants argue that the Appellate Division, in affirming Plaintiff's speeding conviction, concluded that probable cause existed for the traffic stop. Id. at 9. Plaintiff opposes Defendants' motion, contending that collateral estoppel does not apply because Defendants were not parties to the state court proceedings. As explained below, Plaintiff's argument is misplaced.

---

[6] Because these claims are not affected by any facts pled in Plaintiff's proposed Amended Complaint, I refer to Plaintiff's original Complaint in addressing the parties' arguments in this section.

[7] Plaintiff also alleges a violation of his Fourteenth Amendment rights in Count One. I address this claim infra in Part III.B.

[8] Plaintiff's federal constitutional claims against Defendants in this regard are brought under 42 U.S.C. § 1983. Section 1983 does not create substantive rights but merely provides a remedy for the deprivation of rights established elsewhere in the Constitution or federal laws. Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003). In order to state a claim under § 1983, a plaintiff must show: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under the color of state law. 42 U.S.C. § 1983; see also West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Accordingly, the first step in analyzing any § 1983 claim is to identify the specific Constitutional right allegedly infringed. Graham v. Connor, 490 U.S. 386, 394 (1989).

Collateral estoppel "prevents a party who litigated an issue previously from rearguing that particular issue even if the other litigants were not party to the earlier proceeding." James v. Heritage Valley Fed. Credit Union, 197 F. App'x 102, 105 (3d Cir. 2006) (citing Szehinskyj v. Atty. Gen. of the United States, 432 F.3d 253, 255 (3d Cir. 2005). Indeed, under New Jersey law,[9] issue preclusion, "requires only that an issue of fact or law be determined in a valid proceeding and that final judgment on that issue was necessary to the decision." Pittman v. La Fontaine, 756 F. Supp. 834, 841 (D.N.J. 1991). Moreover, contrary to Plaintiff's argument, there is no requirement that the parties or their privities are the same in both proceedings, only that "the litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal."[10] Id. (citing In Re Braen, 900 F.2d 621, 624, 626 (3d Cir. 1990)); Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005). Thus, a finding in a previous state criminal matter may estop an individual from relitigating that same issue in a later civil proceeding in federal court. See Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951); see also Allen v. McCurry, 449 U.S. 90, 101 (1980) (recognizing that collateral estoppel can apply to a § 1983 claim).

Particularly relevant to claims brought pursuant to § 1983 is the Supreme Court's decision in Heck v. Humphrey, which held that in order to bring a suit in federal court to recover damages for an allegedly unconstitutional conviction, a court must look to whether a judgment in

---

[9] "[F]ederal courts are to raise the issue of the preclusive effect of prior state court rulings whenever the courts of the state 'from which the judgments emerged would do so.'" Pittman v. La Fontaine, 756 F. Supp. 834, 840 (D.N.J. 1991) (quoting Kelley v. TYK Refractories Co., 860 F.2d 1188, 1193 (3d Cir. 1988)).

[10] Plaintiff relies on a variation of collateral estoppel referred to as "offensive" issue preclusion, in which the plaintiff seeks to prevent the defendant from re-litigating an issue. In those circumstances, there is a requirement that the defendant was a party to prior proceedings. See, e.g., Skunda v. Pa. State Police, 47 F. App'x 69, 71 (3d Cir. 2002). Here, however, it is Defendants who seek to prevent Plaintiff from relitigating the issue of probable cause, which Plaintiff has already litigated to final judgment in the state court proceedings.

favor of the plaintiff in a subsequent civil suit would necessarily imply the invalidity of his conviction or sentence. Heck v. Humphrey, 512 U.S. 477, 487 (1994); see also Fernandez v. City of Elizabeth, 468 F. App'x 150, 153-54 (3d Cir. Mar. 15, 2012). Thus, when a previously convicted plaintiff brings a suit for monetary damages under § 1983 for an unconstitutional conviction, or for other harms caused by actions that would render a conviction invalid, the plaintiff must show that the conviction has been invalidated. Heck, 512 U.S. at 486-87. "[W]hen a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487.

Here, there is no question that there is a valid conviction underlying Plaintiff's § 1983 claims. Plaintiff clearly alleges that his speeding conviction has been upheld on final appeal, see Compl., ¶¶ 14-16, see also supra Footnote 5, and the Court also takes notice of that decision. See Def. Br., Ex. A (State of N.J. v. Mitchell, No. A-3524-10T3, *1, at **6-8 (N.J. App. Div. Feb. 27, 2012)). Plaintiff thus cannot bring any action in this Court that would undermine the validity of that conviction. However, Plaintiff's Fourth Amendment claim in the Complaint is predicated on the argument that Defendants Vicente and Crawford lacked probable cause for the traffic stop and related citations. This claim, if successful, would undermine the validity of his state court conviction by requiring a finding of facts contrary to those of the conviction. In upholding Plaintiff's speeding conviction, the New Jersey Superior Court and Appellate Division necessarily determined that Defendants Vicente and Crawford had probable cause to stop Plaintiff and to issue him a citation for speeding. See id., State of N.J. v. Mitchell, No. A-3524-10T3, *1, at *7 ("We affirm defendant's conviction for speeding because there was substantial

credible evidence to support the Law Division's finding that defendant was travelling at least ninety miles per hour."). Accordingly, Plaintiff is barred from relitigating his Fourth Amendment claim, regarding probable cause, in this action.[11] Heck, 512 U.S. at 487.

Plaintiff also claims, in Count Two of the Complaint and pursuant to § 1983, that Defendants Crawford and Vicente conspired to maliciously prosecute him in violation of his Fourth Amendment right. As noted earlier, the crux of Plaintiff's Fourth Amendment conspiracy argument turns on Plaintiff's assertion that Defendants lacked probable cause to conduct the traffic stop. Because the Court has already concluded that Plaintiff's substantive Fourth Amendment claim is precluded, there is no predicate constitutional injury or deprivation necessary to state a conspiracy claim. See 42 U.S.C. § 1983; Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989) ("A determination that § 1983 is available to remedy a statutory or constitutional violation [requires that] . . . the plaintiff . . . assert the violation of a

---

[11] To the extent that there may be some question over whether Plaintiff's speeding conviction falls within the scope of Heck, I note that the Third Circuit and courts in this district have held that Heck applies to convictions beyond typical criminal convictions. E.g., Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005); Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 790 (D.N.J. 2008).

Moreover, even if Heck were inapplicable to Plaintiff's speeding conviction, the doctrine of collateral estoppel clearly applies to preclude Plaintiff from relitigating the issue of probable cause in this matter. See James v. Heritage Valley Federal Credit Union, 197 F. App'x at 105 (holding Fourth Amendment claim barred in § 1983 suit because collateral estoppel precluded plaintiff from relitigating issues argued before the state trial court). In the state court matter, (1) Plaintiff raised the identical issue of probable cause before the Superior Court and the Appellate Division, see State of N.J. v. Mitchell, No. A-3524-10T3, at *5 (noting Plaintiff's argument on appeal that the Superior Court erred by not dismissing the case for lack of evidence supporting the traffic stop); (2) the Appellate Division held, as a necessary part of its decision, that there was sufficient evidence to support Defendant Vicente's decision to stop Plaintiff's vehicle for speeding, id., at *7-*8; and (3) Plaintiff was fully represented. See Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 209 (3d Cir. 2001) ("[T]he standard requirements for collateral estoppel, more generally termed issue preclusion, [are] (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."); accord Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005).

federal right."). Accordingly, Plaintiff's § 1983 conspiracy claim in Count Two of the Complaint is dismissed.

Because Plaintiff's Fourth Amendment claims are barred as a matter of law unless Plaintiff's underlying speeding conviction were reversed, and there are no additional facts in the proposed Amended Complaint to that effect, it would be futile to allow Plaintiff to amend his Complaint as to those claims. See Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000). Accordingly, Plaintiff's motion to amend his Complaint is denied in part for Count One, with respect to his Fourth Amendment claim, and in whole for Count Two.

### B. Plaintiff's Fourteenth Amendment § 1983 Claim

Plaintiff raises a separate constitutional claim in Count One under the Fourteenth Amendment, arguing that his right to equal protection under the law was violated because Defendants engaged in racial profiling in effecting the traffic stop.[12] As explained above, Defendants move to dismiss Plaintiff's claim on the basis that the Complaint does not contain sufficient factual allegations to support Plaintiff's racial profiling claim. Plaintiff, in response, does not oppose Defendant's motion to dismiss, but rather has filed a motion for leave to amend his Complaint with the proposed Amended Complaint attached, which includes additional facts to support the Fourteenth Amendment claims against Defendants Vicente and Crawford, as well

---

[12] Plaintiff's Fourteenth Amendment claim is not similarly barred by collateral estoppel or Heck. See Carrasca v. Pomeroy, 313 F.3d 828, 836 (3d Cir. 2002) ("The fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected . . . . [E]qual protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment." (Citation omitted, internal quotation marks omitted.)). This is because an equal protection violation may occur regardless of whether there is probable cause to stop an individual, if the stop is racially motivated. See id.

The Court notes, however, that Plaintiff appears to have raised a similar argument regarding racial profiling in the underlying state court matter. See State of N.J. v. Mitchell, No. A-3524-10T3, at *4 (noting that Superior Court rejected Plaintiff's racial profiling claim). Defendants, however, have not argued that collateral estoppel applies to this issue.

as his claims against Defendant Fuentes. Defendants, in their reply papers, argue that Plaintiff's motion for leave to amend should be denied because even with the additional facts pled in the proposed Amended Complaint, Plaintiff still fails to state any claim upon which relief can be granted, and thus the proposed amendment is futile.

The Third Circuit has consistently held that when an individual has filed a complaint under § 1983 that is dismissible for a lack of factual specificity, that individual "should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint.'" Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (internal quotation marks omitted) (quoting Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir. 1985)); see also Fed. R. Civ. P. 15(a). Indeed, in civil rights cases, the Court should offer amendment, whether requested or not, when dismissing a claim unless it would be futile or inequitable. Alston v. Parker, 363 F.3d 229, 237 (3d. Cir. 2004)); Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993) (holding that, in absence of substantial or undue prejudice, the Court may only deny a request for leave to amend a complaint when the denial is based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of the amendment").

An amendment is futile if the complaint as amended would fail to state a claim for which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In order to determine whether an amendment is futile, the Court applies the same legal sufficiency standard as under Fed. R. Civ. P. 12(b)(6). In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434. As discussed above, under Rule 12(b)(6), a complaint is legally insufficient only if, after accepting all of the well pleaded allegations in complaint as true and viewing them

in a light most favorable to the plaintiff, the plaintiff does not state a claim and is therefore not entitled to relief. Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000).

In order for Plaintiff to state an equal protection claim under the Fourteenth Amendment against Defendants Crawford and Vicente, Plaintiff must allege that: (1) the actions of the officials had a discriminatory effect; and (2) the actions were motivated by some discriminatory purpose. Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). To show that the action had a discriminatory effect, Plaintiff must allege that he is a member of a protected class and that he was treated differently than similarly situated individuals in an unprotected class. Id. at 206; see also United States v. Armstrong, 517 U.S. 456, 469 (1996). The discriminatory purpose prong requires more than some general awareness of the consequences of one's actions; instead, there must be allegations that a decision maker – here, Defendants Vicente and Crawford – selected or reaffirmed a course of action based, at least part on, the effect it may have on an identifiable group of individuals. McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

Turning to the proposed Amended Complaint, Plaintiff alleges that he is an African American, Am. Compl., ¶ 1, and thus he clearly is a member of a protected class. See Bradley, 299 F.3d at 205  Plaintiff further alleges that Defendants Crawford and Vicente racially profiled him because they observed he was an African American driving a nice sports car with a white female passenger and, based on this, stopped him. Am. Compl., ¶ 6. During the traffic stop, Plaintiff alleges that while Defendant Crawford remained in the patrol vehicle, Defendant Vicente approached Plaintiff's car with a demeanor and condescending tone that indicated he was "displeased" with the fact that Plaintiff was African American and had a white female passenger, and also made several sarcastic comments to Plaintiff concerning Plaintiff's passenger. Id. ¶ 8-9. Plaintiff also alleges that once Defendant Vicente returned to the patrol

car, he engaged in a conversation with Defendant Crawford that was "disparaging" toward Plaintiff.[13] Id. ¶ 10.

With these facts, Plaintiff has adequately pled a Fourteenth Amendment equal protection claim sufficient to withstand a Rule 12(b)(6) motion to dismiss. Plaintiff has pled facts that, if true, show the discriminatory effect of Defendants Vicente and Crawford's action – selecting Plaintiff instead of other drivers – which was motivated by some discriminatory purpose – the fact that Plaintiff is an African American who was driving a sports car with a white female passenger. See Bradley v. United States, 299 F.3d at 205; see also West v. Atkins, 487 U.S. 42, 48 (1988) (to state a claim under § 1983, a plaintiff must show: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed or caused by a person acting under the color of state law); Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' . . . The pleading standard 'is not akin to a 'probability requirement,''. . . to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (Citations omitted.)). Thus, the Court determines that Plaintiff's proposed Amendment Complaint adequately states a claim of racial profiling. The Court therefore grants Plaintiff leave to amend his Fourteenth Amendment claim in accordance with the proposed Amended Complaint.

---

[13] Although not clear from the proposed Amended Complaint, Plaintiff's allegations regarding these facts are drawn from the Patrol Video, which Plaintiff apparently has incorporated by reference into his pleadings. See Pl. Omnibus Br, 1. Having reviewed the Patrol Video, see W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (court, on 12(b)(6) motion, may look to matters extraneous to pleadings that are integral to or explicitly relied on in the complaint), I find that it does not reveal any additional facts, other than those pled in the proposed Amended Complaint, that would support or negate Plaintiff's Fourteenth Amendment claim. Indeed, Plaintiff concedes that portions of the Patrol Video are "completely inaudible." Id. Neither party, however, has supplied the Court with a transcript of the Patrol Video or a version with improved audio quality.

### C. Plaintiff's §§ 1985 & 1986 Claims

Plaintiff also brings, in Count Three, a conspiracy claim under 42 U.S.C. § 1985(3), alleging that Defendants Crawford and Vicente conspired to racially target and stop Plaintiff in violation of the Fourteenth Amendment, and, in Count Four, a claim under 42 U.S.C. § 1986 for negligent failure to prevent a § 1985 violation, alleging that Defendant Crawford was aware of Defendant Vicente's unlawful, unconstitutional, conduct but failed to prevent it. Again, Defendants oppose both claims on the basis that Plaintiff has failed to allege facts in the proposed Amended Complaint sufficient to support either claim.

To state a claim under § 1985(3), Plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks omitted) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)). In the proposed Amended Complaint, Plaintiff has pled additional facts to support his Fourteenth Amendment conspiracy claims. Specifically, Plaintiff alleges that Defendants Vicente and Crawford had a "disparaging" conversation in the patrol car during which they agreed to issue Plaintiff "bogus tickets," and then acted in concert to issue these tickets. Am Compl., ¶ 10. These facts, if true, could show that Defendants Vicente and Crawford had an agreement to issue Plaintiff citations based not (solely) on his excessive speed, but on his race. Indeed, one inference that could be drawn from these facts is that Defendants Vicente and Crawford decided, on the basis of Plaintiff's race, to issue Plaintiff not only an excessive speed citation but also one for reckless driving – a citation that was ultimately dismissed by the Appellate Division as

unsupported by the evidence. Thus, I conclude that Plaintiff has adequately stated in the proposed Amended Complaint a § 1985(3) conspiracy claim against Defendants Vicente and Crawford with respect to an equal protection violation.[14]

Plaintiff's § 1986 claim, in Count Four, against Defendant Crawford is dependent on a successful claim under §1985(3). Rogin v. Bensalem Twp., 616 F.2d 680, 697 (3d Cir. 1980). To state a claim under § 1986, Plaintiff must allege facts showing that Defendant Crawford (1) had actual knowledge of the § 1985 conspiracy, (2) had the power to prevent the commission of the conspiracy, and (3) refused to prevent the conspiracy, and that, as a result of Defendant Crawford failure, a wrongful act was committed. Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). Here, the same factual allegations in the proposed Amended Complaint relevant to Plaintiff's § 1985 conspiracy claim also provide a basis for Plaintiff's § 1986 claim against Defendant Crawford. Plaintiff alleges that Defendant Crawford knew, was in a position to prevent, and failed to prevent Defendant Vicente from stopping Plaintiff and issuing him citations on account of his race. See Am. Compl., ¶¶ 10, 37. Thus, I conclude that Plaintiff also has adequately stated a § 1986 claim in the proposed Amended Complaint as to Defendant Crawford. Accordingly, Plaintiff is granted leave to amend with respect to the §§ 1985 and 1986 claims because the proposed amendment is not futile.

### D. Plaintiff's § 1983 Failure to Supervise Claim

Plaintiff also brings a claim, in Count Six, against Defendant Fuentes for failing "to train, supervise and/or discipline" Defendants Crawford and Vicente to prevent them from violating Plaintiff's rights. Am. Compl., ¶¶ 40-46. Initially, the Court notes that Plaintiff has not clearly

---

[14] To be sure, Plaintiff's § 1985(3) conspiracy claim premised on a Fourth Amendment violation for lack of probable cause cannot proceed, even as amended, for the same reasons as set forth in Part III.A, supra.

specified whether Defendant Fuentes is being sued in his individual or official capacity. However, Plaintiff asserts that Defendant Fuentes is being sued for "prospective injunctive relief" only. Am. Compl., ¶ 4. Because prospective injunctive relief can only be obtained in a § 1983 action against a state party in his or her official capacity, the Court treats Plaintiff's claim as a claim against Defendant Fuentes in his official capacity, on a theory of failing to train Defendants Crawford and Vicente. See Iles v. de Jongh, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that that a state employee may be sued in his official capacity only for "prospective" injunctive relief, because "official-capacity actions for prospective relief are not treated as actions against the State" and are thus not barred by sovereign immunity).[15]

It is well-settled that that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added); Beck v. City of Pittsburgh, 89 F.3d 966, 971-72 (3d Cir. 1996); White v. Williams, 179 F. Supp. 2d 405, 417-418 (D.N.J. 2002). Significantly, in the Third Circuit, an individual governmental official may be held liable for failure to train under § 1983 only if he or she has been personally involved with the alleged constitutional violations. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). This "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. These allegations, however, must be made with "appropriate particularity." Id.; see also Bell Atl. Corp.

---

[15] Further supporting this determination is the fact that (1) contrary to Defendant Fuentes, the Amended Complaint clearly states that Defendants Crawford and Vicente are being sued in their individual capacities, Am. Compl., ¶¶ 2-3, and (2) the nature of the relief Plaintiff seeks – i.e., prospectively enjoining the New Jersey State Police from engaging in racial profiling – is properly asserted against a governmental entity, not an individual. However, to the extent that Plaintiff is seeking to recover damages from Defendant Fuentes in his official capacity – as the claim for relief in the Amended Complaint could be read as suggesting – that claim is barred by sovereign immunity. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

16

v. Twombly, 550 U.S. at 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Plaintiff claims that judgment should be entered against Defendant Fuentes for his "deliberate indifference" of Plaintiff's rights based entirely on the following allegations. First, Plaintiff alleges that there have been numerous other complaints of racism in the last thirty years against the New Jersey State Police. Am. Compl., ¶ 42. Plaintiff further alleges that Defendant Fuentes "contributed to and/or developed and maintained policies and customs" of inadequate training and supervision that have fostered a deliberate indifference to the constitutional rights of people in New Jersey, id. ¶¶ 43-44, and which polices and customs were the cause of the alleged violation of Plaintiff's rights. Id. ¶ 45-46.

Plaintiff does not point to any specific official policy, custom, or decision other than the generalized allegation that there have been complaints over the years of racism on the part of the New Jersey State Police. Significantly, Plaintiff does not allege that the New Jersey State Police currently or actually has a policy or custom of racism, racial profiling, or premised on other any other type of race-based motivation. Indeed, Plaintiff's remaining allegations relating to the policy or custom are conclusory and circular. Plaintiff contends there is a policy or custom of deliberate indifference toward the constitutional rights of others, and thus judgment should be entered against Defendant Fuentes because he has shown a deliberate indifference by contributing to these policies or customs. These bare allegations, without further explanation, are insufficient to plausibly demonstrate that there is a specific policy or custom of racial profiling in the New Jersey State Policet, let alone Defendant Fuentes's personal involvement in or conscious acquiescence of such a policy of custom. McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must identify a custom

or policy, <u>and specify what exactly that custom or policy was</u> . . . The complaint [here]. . . simply alleges that [the plaintiff's] rights were violated 'due to the [defendant's] policy of ignoring First Amendment right[s.]' . . . This is not sufficient."); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)) (a §1983 plaintiff must identify a failure to provide specific training that has a causal nexus with their injury.). Accordingly, I conclude that both Plaintiff's Complaint and proposed Amended Complaint fail to adequately allege a failure to train claim against Defendant Fuentes. Plaintiff's failure to train claim in Count Five is therefore dismissed, and if Plaintiff seeks to assert such a claim, he will have to move for such relief and attach a proposed amended complaint for review.

  **E. Plaintiff's State Law Claim**

In addition to bringing claims under 42 U.S.C. §1983, Plaintiff also brings claims under the New Jersey State Constitution through the NJCRA in Count Five. The NJCRA was modeled after § 1983, and thus courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); Chapman v. New Jersey, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . ."); Armstrong v. Sherman, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."). Accordingly, Plaintiff's New Jersey State Constitution claims will be interpreted analogously to his § 1983 claims. Trafton, 799 F. Supp. 2d at 443-44; see Hedges v. Musco, 204 F.3d 109, 121 n.12 (3d Cir. 2000) (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

Based on the forgoing analysis, the Court concludes that Plaintiff's NJCRA claim can proceed with respect to Plaintiff's equal protection claim, but not Plaintiff's lack of probable cause claim. Should Plaintiff ultimately prevail on his federal equal protection claim, he would also likely prevail on his NJCRA claim for the same reasons.

**CONCLUSION**

For the reasons set forth above, Plaintiff's § 1983 claims brought under the Fourth Amendment in Count One and Count Two are dismissed. Plaintiff is granted leave to amend his § 1983 claim in Count One that is brought under the Fourteenth Amendment, as well as his similar state law NJCRA claim in Count Five. Plaintiff is further granted leave to amend his §§ 1985 and 1986 claims in Count Three and Count Four. Lastly, Plaintiff's § 1983 claim against Defendant Fuentes, in his official capacity, is dismissed without prejudice. In sum, Plaintiff is given leave to file his proposed Amended Complaint, but all Counts are dismissed except those claims relating to violations of the Fourteenth Amendment in Count One, Count Three, and Count Four, as well as the related state law equal protection claim in Count Five under the NJCRA. An appropriate order will follow.

Dated: May 22, 2013 /s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.