**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DWIGHT D. MITCHELL,

        Plaintiff,

v.

VINICIUS VINCENTE, et al.,

        Defendants.

Civ. No. 12-03394 (FLW)

**OPINION**

**WOLFSON, United States District Judge:**

    The instant matter arises out of Plaintiff Dwight D. Mitchell's ("Plaintiff") Amended Complaint asserting federal and state constitutional violations against Defendants Vinicius Vicente ("Vicente") and Dameon Crawford ("Crawford") (collectively, "Defendants"), New Jersey State Police Officers, stemming from a traffic stop and resulting citations. After Plaintiff filed the original Complaint, Defendants filed a motion to dismiss all counts. In response, Plaintiff opposed the motion and filed a cross-motion for leave to amend the complaint. On May 22, 2013, this Court partially dismissed Plaintiff's Complaint; however, Plaintiff was granted leave to file the proposed Amended Complaint. Defendants have now filed a motion to dismiss the Amended Complaint on the basis that Plaintiff's equal protection claims based on race are barred by collateral estoppel. For the following reasons, the Court grants Defendants' motion to dismiss, finding that collateral estoppel bars Plaintiffs' claims.

1

I.     BACKGROUND

For the purposes of this motion to dismiss, the following facts, taken from the Amended Complaint, are assumed to be true.

On June 6, 2010, Defendants Vicente and Crawford, New Jersey State Police Officers, stopped Plaintiff's vehicle. Amend. Compl., ¶¶ 2-4. Plaintiff, an African American male, was driving a "nice, newer model sports car with a white female passenger," Elena Itcekova. Id., ¶¶ 5, 15. Plaintiff was driving home when he noticed that a police car began following him at a high rate of speed, forcing Plaintiff to change lanes and speed to avoid a collision. Id., ¶ 4. After being stopped by Defendants Vicente and Crawford, Plaintiff was issued citations for speeding at 130 mph in a 65 mph zone and for reckless driving. Id., ¶ 10.

On September 14, 2010, after a trial in the Edison Municipal Court ("Municipal Court"), Plaintiff was convicted of speeding at 130 mph in a 65 mph zone, fined $272 and $33 in court costs, and received a six month license suspension. Id., ¶ 14. Plaintiff appealed this decision to the Superior Court, Law Division of New Jersey ("Law Division"), and in so doing, supplemented the record with the newly obtained patrol car video (the "Patrol Video"). Id., ¶¶ 17-18. The Law Division modified the Municipal Court's judgment and findings with regard to the speeding charge, holding that Plaintiff was speeding at 90 mph instead of 130 mph, and the judge reinstated Plaintiff's driving privileges. Id., ¶ 19. The Law Division left unaltered Plaintiff's reckless driving conviction. See id. Plaintiff then appealed the Law Division's judgment to the Appellate Division. Id., ¶ 20. The appellate court affirmed the speeding conviction on the grounds that there was substantial credible evidence that Plaintiff was traveling at least ninety

mile per hour. See Def. Br., Ex. A (State of NJ v. Mitchell, No. A-3524-10T3, *1, at *3 (N.J. App. Div. Feb. 27, 2012)). The court, however, reversed the reckless driving conviction on the grounds that it was based on the same facts as Plaintiff's conviction for speeding. Id.

On June 5, 2012, Plaintiff filed a Complaint in the United States District Court for the District of New Jersey against Defendants Colonel Joseph R. Fuentes, Defendant Vicente, and Defendant Crawford alleging fourth and fourteenth amendment constitutional violations under 42 U.S.C. §§ 1983, 1985, and 1986, as well as a failure to supervise claim solely against Defendant Fuentes, and a violation of the New Jersey Civil Rights Act ("NJCRA"). See Mitchell v. Fuentes, et al., Civ. 12-3394 (FLW), 2013 WL 2253585 at *1 (D.N.J. May 22, 2013). Defendants moved to dismiss the Complaint, and Plaintiff simultaneously moved for leave to file an Amended Complaint. Id. This Court dismissed all fourth amendment based Counts and granted Plaintiff leave to amend those claims relating to the fourteenth amendment in Counts One, Three, Four, and the NJCRA claim in Count Five. Id., at *10.

Subsequent to the filing of the Amended Complaint, Defendants moved to dismiss all counts as either barred by the doctrine of collateral estoppel or for failure to state a claim upon which relief can be granted. In Count One, Plaintiff asserts a § 1983 claim that Defendants' conduct allegedly violated the Equal Protection Clause of the fourteenth amendment because Defendants targeted Plaintiff for a vehicle stop because of his race. Id., ¶ 26-27. In Count Three, Plaintiff asserts a § 1985(3) claim that Defendants "agreed and conspired to violate the Equal Protection Clause of the Fourteenth Amendment" because "Defendants targeted and racially profiled Plaintiff when they stopped Plaintiff's

vehicle based on Plaintiff's race." Id., ¶ 34. In Count Four, Plaintiff assets a § 1986 claim that "Defendant Crawford… agreed and conspired with Defendant Vincente to racially profile Plaintiff… and was aware of Defendant Vincente's unlawful conduct, was in a position to prevent the commission of said conduct, but neglected/refused to do so." Id., ¶ 36. Finally in Count Five, Plaintiff asserts that "Defendants violated the rights of Plaintiff under Article 1, Paragraphs 1, 5 and 7 of the New Jersey Constitution and the New Jersey Civil Rights Act." Id., ¶ 37.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); see also Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

4

of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has act unlawfully." Id. (citing Twombly, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

When presented with a motion to dismiss, the court should engage in a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. Id. It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 556 U.S. at 667). Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234-35); see Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' … The pleading standard 'is not akin to a 'probability requirement,'" … to survive a

motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (Citations omitted)).

### III. DISCUSSION

Defendants argue that Plaintiff's Amended Complaint should be dismissed because the issue of racial profiling, on which Plaintiff bases his fourteenth amendment claims, was previously adjudicated, and thus Plaintiff is barred by the doctrine of collateral estoppel from bringing his equal protection claims in the instant lawsuit. In response, Plaintiff argues that the equal protection claims are not barred by the doctrine of collateral estoppel, and further, that the Amended Complaint contains sufficient facts to withstand a motion to dismiss.

To support his claims, Plaintiff specifically alleges that, during the traffic stop, Defendant Vincente's "demeanor and condescending tone were apparent" when he approached the car. Amend. Compl., ¶ 7. Plaintiff further alleges that Defendant Vincente was noticeably "displeased with the notion of an African American male driving a nice sports car with a white female passenger." Id., ¶ 7. In that connection, Plaintiff states that Defendant Vincente made "sarcastic and inappropriate comments to Plaintiff" about his race and his female passenger. Id., ¶ 8. After Defendant Vincente returned to the police vehicle, Plaintiff alleges that Defendants had a disparaging conversation about Plaintiff, recorded on the patrol car's video camera, which is "indicative of their conspiracy to issue bogus tickets for speeding and reckless driving." Id., ¶ 9. Plaintiff further alleges that Defendant Crawford, who was in a position to prevent the discriminatory conduct of Defendant Vincente, failed to take remedial action, and he allegedly agreed to issue false tickets. Id.

6

In the instant case, Plaintiff argues that Fed. R. Civ. P. 12(b)(6) technically does not permit Defendants to raise a collateral estoppel defense by motion.[1] This argument is misplaced. It is well settled that "[a]lthough res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Walzer v. Muriel, Siebert & Co., Inc., 221 Fed. App'x 153, 155 (3d Cir. 2007); see M & M Stone Co. v. Pennsylvania, 388 Fed. App'x 156, 162 (3d Cir. 2010) (citing Connolly Found. V. Sch. Dist. Of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)).

Plaintiff further argues that Defendants did not plead this affirmative defense at the earliest practicable moment—i.e., in the motion to dismiss the original Complaint—and thus, allowing Defendants to raise collateral estoppel now would unduly prejudice Plaintiff and frustrate judicial economy. Generally, Fed. R. Civ. P. 8(c) requires an affirmative defense to be set forth in a defendant's responsive pleading. In support of his argument, Plaintiff relies on Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002). In Robinson, the state asserted that plaintiff's habeas petition was time-barred by the limitations provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and the plaintiff responded that the limitations defense was untimely. The Third Circuit held that the state did not waive its statute of limitations defense. Id. at 141. In that connection, the Third Circuit stated: "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and an opportunity to demonstrate why the affirmative defense should not succeed." Id. at 134-35. The Third Circuit also stated, "If a party has a

---

[1] In regard to Plaintiff's fourteenth amendment claims, Defendants' did not plead collateral estoppel as an affirmative defense in their Rule 12(b)(6) motion to dismiss the original Complaint, and thus, this Court made no ruling in that regard.

7

successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources." Id. at 137.

Plaintiff apparently cites Robinson for the proposition that Defendants' failure to raise their collateral estoppel defense in their motion to dismiss Plaintiff's first Complaint precludes Defendants from raising it in their motion to dismiss the Amended Complaint – apparently reasoning that the first motion to dismiss was the earliest practicable moment. Nothing in Robinson, however, supports this reasoning.

Indeed, Plaintiff has filed an Amended Complaint that asserts new facts and modifies claims. "[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" West Run Student Housing Associates, LLC v. Huntington Nat. Bank, 712 F.3d 165, 171 (3d Cir. 2013) (quoting New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1502 (3d Cir. 1996)). "This approach 'ensures that a particular claim will be decided on the merits rather than on technicalities.'" Id. (quoting Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990)). Notably, Plaintiff has not identified any case law holding that failure to raise a defense in a motion filed on a complaint precludes a party from raising that defense in connection with a later-filed amended complaint.

Here, Defendants crafted new defenses to these additional facts and modified claims that were not present in the original Complaint. In that connection, Defendants raised their collateral estoppel defense in a motion to dismiss approximately one month after Plaintiff filed his Amended Complaint. In any event, Plaintiff has not been

prejudiced because he has had an opportunity to defend against Defendants' fourteenth amendment collateral estoppel defense. Thus, this Court concludes that Defendants properly raised the defense "at the earliest practicable moment." See Robinson, 313 F.3d at 137.

Turning to the merits of Defendants' defense, Defendants argue that the Amended Complaint should be dismissed because the issue of racial profiling was previously adjudicated in state court. Specifically, Defendants argue that the issue of racial profiling was raised and rejected on the merits in Plaintiff's appeal to the Law Division, and then the Appellate Division affirmed the decision. In response, Plaintiff argues that the Counts in the Amended Complaint are not barred by collateral estoppel because the issues are not identical and the issue was not essential to the judgment on the merits in the earlier proceedings.

Defendants have the burden of demonstrating what was determined in the state court. See Fed. R. Civ. P. 8(c); Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 261 (D.N.J. 2001) ("The party seeking to invoke the doctrine of issue preclusion bears the burden of demonstrating what was determined in the prior adjudication"). As explained below, Counts One, Three, Four, and Five of Plaintiff's Amended Complaint are barred by collateral estoppel.

Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court is required to give a state court's decisions "the same preclusive effect in federal court they would be given in the courts of the rendering state. Aldrich Nine Assoc. v. Foot Locker Specialty, Inc., 306 Fed. App'x 723, 726 (3d Cir. 2009) (citing Del. River Port Auth. V.

9

Fraternal order of Police, Penn-Jersey Lodge 30, 290 F.3d 567, 573 (3d Cir. 2002)).[2] Thus, New Jersey preclusion law applies.

Collateral estoppel "prevents a party who litigated an issue previously from rearguing that particular issue even if the other litigants were not party to the earlier proceedings."[3] James v. Heritage Valley Fed. Credit Union, 197 F. App'x 102, 105 (3d Cir. 2006) (citing Szehinskyj v. Atty. Gen. of the United States, 432 F.3d 253, 255 (3d Cir. 2005). In the Third Circuit, "A finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding." James v. Heritage Valley Federal Credit Union, 197 Fed. App'x 102, 105 (3d Cir. 2006) (citing Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951)). In New Jersey, the party asserting collateral estoppel must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Hennessey v. Winslow Township, 183 N.J. 593, 599, 875 A.2d 240 (2005); see also Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006).

---

[2]   It is well settled that § 1738 encompasses the issue preclusion, or collateral estoppel, doctrine. San Remo Hotel v. City & Cnty. Of S.F., 545 U.S. 323, 336, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005).

[3]   Defendants have specifically asserted the doctrine of issue preclusion, or common law collateral estoppel. Defendants do not assert claim preclusion. Issue and claim preclusion are similar, however, "they have different consequences." Wheeler v. Nieves, 762 F. Supp. 617, 624 (D.N.J. 1991). As opposed to issue preclusion, "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Id. (citing McNasby v. Crown Cork and Seal Co., 888 F.2d 270, 275 (3rd Cir. 1989)).

In order to invoke collateral estoppel, all five factors must be satisfied. Winters v. North Hudson Regional Fire and Rescue, 212 N.J. 67, 96, 50 A.3d 649, 666 (2012). Moreover, "[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970). Plaintiff has challenged only the first and fourth factors. After examining the record, this Court finds that Defendants have carried their burden on the first and fourth factors, and thus, Plaintiff's claims are barred by collateral estoppel.

First, the primary question before the Municipal Court, and subsequently the Law and Appellate Divisions, was whether Plaintiff was traveling at the speed for which he was cited and whether he was driving recklessly. In that connection, however, the Appellate Division's opinion makes clear that Plaintiff raised a claim, both in the Law Division and on appeal, that he was impermissibly stopped because of his race. In particular, the Appellate Division quoted the following from the Law Division's opinion:

> The defense has claimed that there was a trooper bias, and that this incident was related to 'driving while black.' After a review of the audio and video, it appears that no bias is present… The Court therefore, does not find that any of the alleged racial taint, bias, or profiling existed based on the material reviewed.

State of NJ v. Mitchell, Civ. No. A-3524-10T3, 2012 WL 603221, *1, at *2 (N.J. App. Div. Feb. 27, 2012). Plaintiff raised this same issue on appeal, claiming that the lower court erred "when it said there was no basis for racial discriminatory practices *to warrant the case dismissed* because the [Defendant] trooper did not see [Plaintiff] until after the traffic stop." *Id.* (emphasis added). After reviewing the record on appeal and Plaintiff's arguments, the Appellate Division affirmed the Law Division's finding that there was no racial bias present in Defendants' decision to issue Plaintiff the traffic citations. *Id.*

("We conclude from our review of the entire record that all of these arguments are clearly without merit.").

In the present matter, Plaintiff has alleged violations of his federal and state constitutional equal protection rights when "Defendants targeted and racially profiled Plaintiff *when they stopped Plaintiff's vehicle based on Plaintiff's race*." Amend. Compl., ¶ 27 (emphasis added); *see also id.* at ¶ 34 ("Defendants . . . agreed and conspired to violate the Equal Protection Clause . . . . Specifically, Defendants targeted and racially profiled Plaintiff *when they stopped Plaintiff's vehicle based on Plaintiff's race*." (Emphasis added.)). It is thus clear from the pleadings that Plaintiff's equal protection challenge is a racial profiling, or selective enforcement, claim grounded solely in Defendant's decision to pull over Plaintiff's vehicle based on his race.[4]

This claim is barred by collateral estoppel. As the above cited language from the Law Division and Appellate Division decisions reveal, both the Law Division and the Appellate Division rejected Plaintiff's claim that the incident leading to the traffic

---

[4] Selective enforcement of, and selective prosecution under, facially neutral laws "may constitute illegal discrimination even if the [enforcement or] prosecution is otherwise warranted" where the disparate treatment is based upon an improper, discriminatory motive. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 425 (3d Cir.2003); see also Suber v. Guinta, 927 F. Supp. 2d 184, 202 (E.D. Pa. 2013) ("Intentional or purposeful discrimination is a necessary element of an equal protection claim." (Citing Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985)). In United States v. Armstrong, 517 U.S. 456, the Supreme Court indicated that "a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Id. at 463.

To the extent that Plaintiff has argued in his brief that his equal protection rights were violated because Defendants exaggerated the illegality of Plaintiff's driving by issuing him a ticket for a higher rate of travel and as well as for reckless driving, such an allegation is found nowhere in Plaintiff's Amended Complaint. A party may not expand their pleadings through briefing, and thus this Court focuses only on Plaintiff's claims as pled. Holland v. Simon Property Group, Inc., 495 F. App'x 270, 272 n.4 (3d Cir. 2012).

12

citations was the result of, or related to, racial profiling. Mitchell, 2012 WL 603221, at *2. Indeed, Plaintiff argued that his citations should be dismissed on this very basis, see id., and under New Jersey law, had there been a finding of racial bias or selective enforcement, Plaintiff could have sought to have the citations dismissed by suppressing the evidence supporting the citations. See, e.g., State v. Segars, 172 N.J. 481, 493 (2002) (explaining that an officer acted based solely on race, that action is illegal and the evidence resulting from that action must be suppressed). Plaintiff's claim here is identical to the claim in state court—Plaintiff contends that Defendants' made the decision to stop Plaintiff's vehicle and issue him citations based solely on his race. Moreover, it is apparent that, under New Jersey law, once Plaintiff raised a claim of racial bias or selective enforcement, the resolution of that claim against Plaintiff was essential to upholding the citations.[5] See id. Accordingly, because Plaintiff has only challenged whether Defendants have satisfied their burden on these prongs of the collateral estoppel defense—and, in any event, I find that this issue was actually litigated in the prior proceeding, the court in the prior proceeding issued a final judgment on the merits, and the party against whom collateral estoppel is being asserted was a party in the previous action—and because I find that Defendants have demonstrated that the issues in the two proceedings are identical and essential to the judgment, I conclude that Plaintiff's racial bias claim is barred by collateral estoppel, and thus is dismissed.

---

[5] Further supporting a determination that Plaintiff's claim is barred is the fact that significant, if not identical, overlap of witnesses and evidence exists between the state and federal actions. Here, Plaintiff focuses on Defendants' demeanor, comments made to Plaintiff, and comments made between Defendants regarding Plaintiff's race. See Amend. Compl., ¶ 8 (alleging that Vicente made "sarcastic and inappropriate comments to Plaintiff.") Plaintiff alleged similar, if not identical, facts in the state court action, which both the Law Division and Appellate Division rejected as unsupported by the record. Mitchell, 2012 WL 603221, at *2.

13

Having determined that Plaintiff has no viable claim for an equal protection violation based on racial bias, Plaintiff's remaining claims in the Amended Complaint predicated on his § 1983 racial profiling claim—specifically, Count Three, conspiracy to violate civil rights under § 1985(3), Count Four, failure to intervene under § 1986, and Count Five, violation of the NJCRA—must also be dismissed.  Rogin v. Bensalem Twp., 616 F.2d 680, 697 (3d Cir.1980).  Additionally, in Count Two, Plaintiff apparently has mistakenly reasserted a § 1983 claim predicated on a fourth amendment violation.  Amend. Compl., ¶¶ 29.  In my previous opinion, I held that "Plaintiff's § 1983 claim[] brought under the Fourth Amendment in . . . Count Two [is] dismissed."  Mitchell, 2013 WL 2253585, at *10.  Since this Court has already dismissed this claim as barred by Heck, Count Two is again dismissed on the same basis.

## CONCLUSION

For the reasons set forth above, the Court determines that Plaintiff's claims in Counts One, Three, Four, and Five of the Amended Complaint are barred by collateral estoppel, and Count Two is barred by this Court's previous holding.  Defendants' motion to dismiss is therefore granted on all Counts of the Amended Complaint.

Date: March 17, 2014                              /s/  Freda L. Wolfson
                                                  FREDA L. WOLFSON, U.S.D.J.